GARTH, Circuit Judge,
dissenting in part and concurring in part:
By holding that the findings of an unre-viewed administrative agency have preclu-sive effect in subsequent Title VII and ADEA cases, I believe the majority opinion has jettisoned Supreme Court and Third Circuit precedents. Accordingly, although I concur in affirming the judgment of the District Court, I write separately because the majority holds that Congress intended SOX to predominate over other federal statutes such as Title VII and ADEA. I find no such intent.
I.
I adhere to our precedents and our longstanding principle that “unreviewed administrative agency findings can never be accorded issue preclusive effect in subsequent Title VII and ADEA proceedings.” Roth v. Koppers Indus. Inc., 993 F.2d 1058, 1062 (3d Cir.1993) (citing Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); Univ. of Tenn. v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986)); see also Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (extending this rule to ADEA claims). By contrast, the majority holds that Congress intended SOX to trump Title VII/ADEA on the basis of one sentence in 49 U.S.C. § 42121(b)(4): “An order of the Secretary of Labor [under this section] shall not be subject to judicial review in any criminal or other civil proceeding.”
The principle of a de novo trial in Title VII/ADEA claims is firmly established. See, e.g., Chandler, 425 U.S. at 861, 96 S.Ct. 1949 (“Nothing in the legislative history indicates that ... ‘civil action’ was to have [a] chameleon-like character, providing fragmentary de novo consideration of discrimination claims where ‘appropriate.’ ”). The only extent to which it is not *124 “absolute” is where Congress has manifested a clear intent to set it aside, or where it conflicts with prior statutes. See Solimino, 501 U.S. at 109, 111 S.Ct. 2166 (“[L]egislative repeals by implication will not be recognized, insofar as two statutes are capable of coexistence, ‘absent a clearly expressed congressional intention to the contrary.’ ” (citation omitted)); see also Nat’l Ass’n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007). In the Sarbanes-Oxley Act, Congress has manifested no such intent.
Judge Hardiman argues that the de novo rule is limited to review of decisions by state administrative agencies, but his opinion does not cite to any court or opinion that has raised this distinction. The Supreme Court’s statement of the rule is, in my opinion, more controlling: Title VII contains “a ‘specific statutory authorization’ for a district court ‘civil action,’ which both the plain language of the statute and the legislative history reveal to be a trial de novo.” Chandler, 425 U.S. at 862, 96 S.Ct. 1949; see also Elliott, 478 U.S. at 796, 106 S.Ct. 3220 (declining to distinguish Chandler on the grounds that it had involved a federal agency rather than a state agency). While it is true that most of the relevant case law happens to involve state agency decisions rather than federal agency decisions, the Supreme Court has refused to draw a federal/state distinction in this regard. See, e.g., Elliott, 478 U.S. at 796, 798, 106 S.Ct. 3220 (“[T]he value underlying general principles of collateral estoppel ... is equally implicated whether factfinding is done by a federal or state agency”); Solimino, 501 U.S. at 108, 111 S.Ct. 2166.
Thus, the only way for SOX to take precedence over Title VII and ADEA is for Congress to have clearly expressed its intent to narrow the scope of the established rule of Title VU/ADEA de novo trial. But nowhere does this clear intent appear in the relevant statutes, and Judge Hardiman’s opinion does not provide us with a guide where we might find such an intent. We may look long and hard, but Title VII/ADEA is never mentioned or alluded to in the text or legislative history of SOX or of § 42121. Thus, I am unable to agree that, by adding a cause of action for wronged employees under SOX, Congress intended simultaneously to weaken the extant anti-discrimination framework of Title VII and ADEA.
The language in § 42121 is simply boilerplate text, intended to focus upon the administrative appeals process rather than to encroach upon the substance of other statutory schemes. The exact same provision, relied upon by the majority here, appears in at least eight independent statutes.[7] If Congress truly intended in each *125 instance to use this language to restrict the right to de novo trial in anti-discrimination actions, the silence in the legislative history is deafening.
Moreover, the text of § 42121 is couched merely in terms of “review,” rather than initial determination. In Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), preclusive effect was denied where the Title VII claim previously had been considered in an arbitral forum, even though the arbitrator’s decision was final and binding and judicial review was limited. In so holding, the Court stated that, “in instituting an action under Title VII, the employee is not seeking review of the arbitrator’s decision. Rather he is asserting a statutory right independent of the arbitration process.” Id. at 54, 94 S.Ct. 1011 (emphasis added). Likewise, a plaintiff who institutes an action under Title VII subsequent to a decision under SOX by the Secretary of Labor, as Tice has here, is not seeking review of the SOX decision but rather is asserting an independent statutory right.
Allowing SOX to trump Title VII/ADEA not only ignores Supreme Court and Third Circuit precedents,[8] but also eviscerates sound policy and good common sense. The majority’s opinion sets up a fractious system where employees with legitimate claims under both Title VII/ADEA and SOX effectively are deterred from filing simultaneous complaints with the EEOC and OSHA because early adjudication by one agency would preclude their claims pending before the other—to say nothing of the district court.[9] Cf. Elliott, 478 U.S. at 796 n. 5, 106 S.Ct. 3220 (“ ‘[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.’” (citation omitted)).
Therefore, given that relitigation is permitted when the claim in an administrative court was identical and directly investigated by the agency created specially for that task, it is perverse for the majority to create a new rule prohibiting relitigation when the claim was merely tangential and addressed only in passing by an agency appointed for another task. Cf. Gardner-Denver, 415 U.S. at 56, 94 S.Ct. 1011 (“ ‘[T]he choice of forums inevitably affects the scope of the substantive right to be vindicated.’ ” (quoting U.S. Bulk Carriers v. Arguelles, 400 U.S. 351, 359-60, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971) (Harlan, J., concurring))).
The majority claims its position is supported by two exceptions: the full faith and credit statute, and compulsory arbitration under the Federal Arbitration Act (FAA). It is not. While the majority claims these exceptions demonstrate that there is “no absolute right to de novo review in federal court of all issues arising *126 in a Title VII claim,” majority op. 122, they instead prove the rule.
A. The First Exception
One of the fundamental tenets of our judicial system is that federal courts are required to give “full faith and credit” to the “judicial proceedings of any court of any ... State.” 28 U.S.C. § 1738. In Kremer v. Chem. Constr. Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Supreme Court held that a de novo trial pursuant to Title VII was precluded where a state court had reviewed the state administrative agency’s decision. Because the state court’s review triggered § 1738 and accordingly required the application of full faith and credit, permitting a de novo trial in federal court of a final judgment of a state court would have implicitly repealed the full faith and credit statute. Thus, absent clear congressional intent, Title VII could not supercede the full faith and credit statute (just as SOX does not supercede Title VII). Id. at 470-72 (“[A]n implied repeal must ordinarily be evident from the language or operation of a statute ... [and the legislative history of Title VII] plainly do[es] not demonstrate that Congress intended to override the historic respect that federal courts accord state court judgments.”).
B. The Second Exception
Nor does Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), undermine the general rule of a de novo trial under Title VII/ADEA. Rather, Gilmer stands for the proposition that an employee may voluntarily waive this statutory right, and that the text and legislative history of the ADEA do not preclude such waiver. See id. at 26, 111 S.Ct. 1647 (requiring a showing “that Congress intended to preclude a waiver of a judicial forum for ADEA claims”). This holding does not eviscerate the existence of the right to a de novo trial; to the contrary, it affirms its viability. Moreover, the Court constructed this exception with particular care, after repeatedly denying preclusive effect in the related context of collective bargaining. See, e.g., McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); Gardner-Denver, 415 U.S. 36, 94 S.Ct. 1011.
The care with which the Supreme Court carved out these two exceptions attests to the strength of the principle that Title VII and ADEA claims are entitled to de novo trial in federal court.
Without more, the Sarbanes-Oxley Act, either in purpose or in text, cannot be said to diminish the force of the precedents I have cited, which unambiguously hold that unreviewed agency findings—such as the one that dealt with Tice’s claim here—have no preclusive effect on Title VII or ADEA claims.
II.
One further comment must be made, and because it has assumed the importance that it does in the majority opinion, I feel it must be corrected. The majority opinion, in Section II.C, reads the language in Solimino, 501 U.S. 104, 111 S.Ct. 2166 (1991), as holding that the “clear intent” rule does not apply to Title VII preclusion. It is mistaken. Solimino states only that the “clear intent” rule does not apply to administrative preclusion, precisely because administrative preclusion does not “represent independent values of such magnitude and constancy as to justify the protection of a clear statement rule.” 501 U.S. at 109, 111 S.Ct. 2166.
*127 By contrast, the “clear intent” rule does apply to Title VII, and it applies specifically here because SOX is a federal statute conflicting with Title VII. Indeed, if the preclusion doctrine under Title VII were non-statutory and thus subordinate to other statutes, as the majority suggests, then the “clear statement” rule would not have been invoked in Kremer, 456 U.S. at 468-76, 102 S.Ct. 1883, to resolve a conflict between principles of preclusion under Title VII and the full faith and credit statute because the latter would have clearly trumped. The fact that it was invoked at all demonstrates that Title VII is not automatically subordinate to SOX. In Kremer, Title VII yielded because it was enacted subsequent to, and did not repeal, the full faith and credit statute. See id. at 468, 102 S.Ct. 1883 (“[A]n exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal.” (emphasis added)). Likewise, SOX is subordinate to Title VII, not only because of policy considerations and common sense, see supra, but because SOX was enacted long after Title VII and there is no evidence in either § 42121 or 18 U.S.C. § 1514A of even a glimmer of express or implied repeal.
III.
Nevertheless, mindful of the doctrine that the decision of a lower court “must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason,” SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943), I join in affirming the District Court’s grant of summary judgment to Bristol-Myers. I do so, not because the administrative findings precluded Tice’s Title VII and ADEA claims, but because the District Court could permissibly adopt the ALJ’s findings of fact. In doing so, the District Court properly determined that Tice had failed to demonstrate any genuine issue of material fact concerning her admitted falsifications of sales reports.
Thus, although I strongly disagree with the preclusion analysis of the majority, and accordingly dissent from that analysis, I respectfully concur in the judgment which affirms the District Court’s order of September 13, 2007.

. The earliest reference appears to be in the Safe Drinking Water Act, Pub.L. No. 93-523, § 1450, 88 Stat. 1660 (1974) (codified at 42 U.S.C. § 300j-9(i)(3)(B)). Additional references are contained in at least seven other statutes. Consumer Product Safety Improvement Act of 2008, Pub.L. No. 110-314, § 219, 122 Stat. 3062 (codified at 15 U.S.C. § 2087(b)(5)(B)); 9/11 Commission Act of 2007, Pub.L. No. 110-53, § 1413, 121 Stat. 266, 418 (codified at 6 U.S.C. § 1142(c)(4)(B)); Pipeline Safety Improvement Act of 2002, Pub.L. No. 107-355, § 6(a), 116 Stat. 2985 (2002) (codified at 49 U.S.C. § 60129(b)(4)(B)); Aviation Investment and Reform Act, Pub.L. No. 106-181, § 519(a), 114 Stat. 61 (2000) (codified at 49 U.S.C. § 42121(b)(4)(B)); Energy Reorganization Act of 1974, Pub.L. No. 95-601, sec. 10, § 210, 92 Stat. 2947 (1978) (codified as amended at 42 U.S.C. § 5851(c)(2)); Clean Air Act Amendments of 1977, Pub.L. No. 95-95, sec. 312, § 322, 91 Stat. 685 (1977) (codified as amended at 42 U.S.C. § 7622(c)(2)); and Toxic Substances Control Act, Pub.L. No. 94-469, § 23, 90 Stat. 2003 (1976) (codified at 15 U.S.C. § 2622(c)(2)). Other statutes *125 may incorporate by reference in the manner of SOX. See 18 U.S.C. § 1514A(b)(2).

. See Roth v. Koppers Indus. Inc., 993 F.2d 1058 (3d Cir.1993); Univ. of Tenn. v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

. Under the existing statutory schemes, a plaintiff must first file separate complaints with each respective agency. See 18 U.S.C. § 1514A(b)(l) (allowing action in district court under SOX only “if the Secretary [of Labor] has not issued a final decision within 180 days”); 29 C.F.R. § 1601.28 (mandating issuance of notice of right to sue under Title VII only after 180 days has passed since the filing of a charge with the EEOC); 29 U.S.C. § 626(d) (prohibiting the filing of a civil action under the ADEA until 60 days after a charge has been filed with the EEOC).